Mrs. Betty Sue Hamilton, the beneficiary named in an application for life insurance submitted by her deceased husband, Charles H. Hamilton, sued Franklin Life Insurance Company. At the conclusion of the plaintiff's case, the defendant insurance company moved for a directed verdict which the court denied, and upon failure of the insurance company to offer any proof, entered judgment for the plaintiff in the amount of $25,000. Franklin Life appealed.
On July 25, 1973, Charles Holbert Hamilton applied to Franklin Life for a $25,000 life insurance policy (naming his wife, Betty Sue Hamilton, as the primary beneficiary). Hamilton paid the agent $29.50 for the first month's premium and received a conditional receipt which contained the following:
 This receipt shall operate as a Conditional Premium Receipt only upon fulfillment of the conditions stated in paragraph "FIRST" on the reverse side hereof, which conditions are conditions precedent to the effectiveness of this receipt.
Conditions "FIRST" and "SECOND" in the receipt are as follows:
 FIRST. That (1) if the amount tendered equals or exceeds the monthly premium for the policy applied for and (2) if the Company at its Home Office shall be satisfied after investigation and medical examination (if required) that on the date hereof or on the date of such medical examination, whichever is later, the Proposed Insured was insurable and entitled under the Company's rules and standards to insurance on the plan and for the amount (but not in excess of the amount the Company would retain at its own risk) and at the rate of premium applied for, then the insurance protection applied for shall take effect from said date (except as otherwise provided in Item 14 of the application). Such insurance protection shall expire at the end of the period for which the amount tendered hereunder would provide such insurance on a pro rata basis unless continued by payment of premiums when due.
 SECOND. That if the Company be not so satisfied or if the amount so tendered is less than the monthly premium for the policy applied for, no insurance shall be *Page 121 
considered in effect under this application unless and until the application is approved and accepted by the Company at its Home Office and the policy manually delivered to and accepted by the Proposed Insured or by the Owner if other than the Proposed Insured, during the lifetime and continued insurability of the Proposed Insured and the first premium thereon has been paid in full. If the insurance protection referred to in the above paragraph entitled FIRST shall not take effect, or if the application is declined, or if a policy is issued other than as applied for and not accepted, the Company will make refund of the amount received.
Hamilton was required by the agent to take a physical examination which was performed by a Dr. Wade on July 28, 1973. Dr. Wade's report showed that Hamilton was six feet three inches in height, weighed 260 pounds, and had an at-rest pulse rate of 102. The local agent for Franklin Life mailed the application, along with the first month's premium, to the home office on July 25, 1973. The medical examiner's report was mailed on the date of the examination and was received by Franklin Life on July 31, 1973. Sometime thereafter, Franklin Life's medical examiner determined that Hamilton was not insurable at the rate of premium applied for. The application was not rejected, but, through the local agent, information was requested of Dr. Folse, Hamilton's personal physician. The date of this request is not in the record, but Franklin Life's medical examiner testified that the report from Dr. Folse was not received until September 20, 1973, which was three weeks after Hamilton's death. Hamilton died on September 7, 1973, as a result of a myocardial infarction.
The beneficiary testified that she and her husband married in 1970, that after their marriage, Mr. Hamilton had been hospitalized about a dozen times for stomach problems, colitis, and other similar problems and that he had been treated for the aforementioned problems by Dr. W.E. Folse. She also testified that her husband had been x-rayed during the time of their marriage.
Dr. Wm. A. Henry was called as an adverse witness. He is Franklin Life's medical examiner with the primary duty to evaluate the medical history and medical findings contained in applications and to set the policies of the company in regard to standards by which the company will accept people for insurance. Dr. Henry testified that the company was in the process of "trying to get the information — to get a report from [Hamilton's] personal physician," and that the company never did get the information before it was notified that Hamilton had died. The company wrote Mrs. Hamilton on September 27, 1973, and stated: (1) That it had received the report of Dr. W.E. Folse on September 20, 1973; (2) that "Dr. Folse's report states that he had treated your husband for frequent bouts of colitis and interitis for which he was frequently hospitalized"; (3) that these conditions made Mr. Hamilton uninsurable under the company's rules and standards for issuance of insurance at the rate of premium applied for, and (4) that the company had never approved and accepted the application.
Franklin Life raises the question whether a primary beneficiary under a mortgage life insurance policy has the right to sue, upon the death of the insured, for the proceeds of the policy, or whether the action should be brought by the personal representative. Whatever right of action existed, the named beneficiary in the application would be the proper person in her individual capacity to bring the action. 44 Am.Jur.2d Insurance
§ 1923 (1969).
The main question for our decision is whether a policy of insurance became effective under the circumstances stated. It if Franklin Life's contention that the conditions precedent to the effectiveness of *Page 122 
the policy were never met under the terms of the application or conditional premium receipt and that the conditions of paragraph "FIRST" of the conditional receipt are plain and unambiguous, as are the conditions in the "SECOND" paragraph of the conditional receipt. On the other hand, Mrs. Hamilton contends that Franklin Life waited an unreasonable length of time after the medical examiner determined that Mr. Hamilton was uninsurable and that Franklin Life should have promptly notified Mr. Hamilton that he was uninsurable so that he could have sought insurance elsewhere.
The provisions of the conditional receipt are clear and unambiguous. Paragraph "FIRST" states that if the Home Office of Franklin Life is satisfied after investigation and medical examination that Hamilton was insurable (on the date of the application or on the date of the medical examination), then the insurance would take effect on the date of the application or on the date of the medical examination, whichever is later. Paragraph "SECOND" amplifies this understanding by clearly stating that if the company is not so satisfied (that the applicant was insurable), "no insurance shall be considered in effect under this application unless and until the application is approved and accepted by the company at its Home Office and the policy manually delivered to and accepted by the Proposed Insured, during the lifetime and continued insurability of the Proposed Insured. . . ."
The record reveals that the conditions of the conditional receipt were not fulfilled, the policy was never issued, and Franklin Life tendered the first monthly premium to Mrs. Hamilton on September 27, 1973. Moreover, the record shows that Franklin Life was amply justified in finding that Hamilton was not insurable. Under these facts the insurance never became effective. Life Casualty Insurance Co. v. Harvison,187 So.2d 847 (Miss. 1966).
Nor does the record show such a delay on the part of Franklin Life in notifying Hamilton of his uninsurability that it is estopped to deny that the insurance became effective. It is not shown that Franklin Life unreasonably delayed requesting the medical report from Dr. Folse. The information necessary to determine whether the policy should issue was never received by Franklin Life until after Hamilton's death.
It is unnecessary to discuss the question whether Franklin Life could have avoided liability if the policy had been issued because of the false answers to vital questions in the application. It is significant that the falsity of the answers is shown without dispute.
For the reasons stated, the trial judge should have granted the directed verdict. The judgment is reversed and judgment entered here for the defendant.
REVERSED AND RENDERED.
PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG, WALKER, BROOM and LEE, JJ., concur. *Page 884